IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| WILLISTON BASIN INTERSTATE PIPELINE COMPANY,<br><br>                    Plaintiff,<br><br>     vs.<br><br>Easement and Right-of-Way Across Township 1 South, Range 26 East, PMM<br>Section 15: Lots 3, 4, 5, 6 and 7<br>Section 11: SW1/4SW1/4, C.O.S. #121<br>Section 11: Lot 19 (NW1/4NE1/4)<br>Section 11: Lot 18 (SE1/4NE1/4NW1/4)<br><br>                    Defendant. | CV 05-103-BLG-RFC<br><br><br><br><br><br>ORDER GRANTING WILLISTON BASIN'S MOTION FOR IMMEDIATE USE AND POSSESSION |

## BACKGROUND

Plaintiff Williston Basin Interstate Pipeline Company ("WBI") is an interstate gas pipeline company based in Bismarck, North Dakota. WBI is constructing the Williston Basin Conoco Supply Lateral Pipeline ("The Pipeline"), a buried 12" diameter, 7.5 mile interstate natural gas pipeline that connects an existing pipeline to the Conoco refinery on South 23rd St. in Billings, Montana. The Pipeline will allow WBI (a subsidiary of MDU Resources Group, Inc.) to compete with Northwestern Energy in the delivery of natural gas to the Conoco refinery. The Conoco refinery seeks to comply with federal regulations requiring it to manufacture ultra-low

1

sulfur diesel fuel (ULSD) by June 1, 2006.  Natural gas is a critical element of ULSD production.  Conoco claims that the Pipeline is necessary because Northwestern Energy cannot supply the Conoco refinery with sufficient natural gas to meet the federal ULSD requirements.

WBI holds a Federal Energy Regulatory Commission ("FERC") blanket certificate of public convenience and necessity ("the Certificate").  If the cost of a particular project does not exceed a set amount ($8 million in 2005), the Certificate entitles WBI to construct natural gas pipelines and associated facilities wherever it desires without any review by any court or regulatory authority.  18 C.F.R. § 157.208.  WBI 's Certificate was issued in 1982, the year that the FERC began issuing "blanket" certificates in order to streamline approval of pipeline projects.  Previously, the FERC was required to review and approve every project through issuance of an individual certificate of public convenience and necessity.

The holder of a certificate of public convenience and necessity is entitled to exercise a right of eminent domain in the United States District Court to acquire a right-of-way to construct natural gas pipelines and associated facilities if the holder cannot acquire the right-of-way by private contract.  15 U.S.C. § 717f(h).  This power applies not only to individual certificates of public convenience and necessity, but to blanket certificates as well.  Thus, WBI's Certificate grants it the power to condemn private property in constructing natural gas pipelines without any inquiry into the necessity or reasonableness of this Pipeline or its route by any court or regulatory agency.

WBI has contracted for easements over 88% of the private property required to construct the Pipeline, but has been unable to acquire easements over property owned by the Lindes and the Schotts, the two Defendants in this matter.  The subject easements will ultimately be 50 feet

wide, but 75 feet wide during construction. Defendants will be prohibited from building on the part of the property encumbered by the easements.  On August 12, 2005 WBI filed a Condemnation Complaint pursuant to Rule 71A of the Federal Rules of Civil Procedure seeking to condemn the subject easements.

On August 26, 2005, WBI filed a Motion for Immediate Use and Possession, asking this Court to invoke its equitable powers under Rule 65 Fed.R.Civ.P.  WBI argues §717f(h) of the Natural Gas Act ("NGA") grants them the"unquestionable right to condemn the subject easement" and that they should be granted immediate possession because their ultimate success is "as sure as anything in litigation can be."  Defendants recognize that the NGA provides Certificate holders with a right of condemnation, but claim that WBI has acted in bad faith and abused its discretion by routing the Pipeline through their property.  Defendants also allege that WBI has grossly overstated its claims of ultimate success and "irreparable harm" and should not be granted preliminary injunctive relief.  A hearing was held on October 26, 2005 at 2:00 PM.

## ANALYSIS

**I.    This Court is without jurisdiction to determine whether WBI abused its discretion and acted in bad faith in routing the Pipeline through Defendants' property.**

Defendants assert that corporate convenience is not a proper justification for condemnation of private property, and that WBI's decision to route the Pipeline through their property is not based on *necessity* but *convenience.*  This, Defendants claim, is because it is much easier for WBI to condemn Defendants' property than that of other landowners who have existing rights-of-way into the Conoco refinery, such as Northwestern Energy, Western Sugar,

3

the Montana Department of Transportation, Yellowstone County, or the City of Billings.
Defendants also assert that the present action is their sole opportunity to challenge WBI's
proposed route because WBI is proceeding under their blanket Certificate to avoid FERC review
of the proposed Pipeline route. Defendants argue that this case is unlike CV-03-87, where this
Court granted WBI immediate possession of an easement for pipeline construction, because in
that case, WBI did not proceed under their blanket Certificate. However, in CV-03-87, WBI was
constructing a much larger, more expensive interstate pipeline and was therefore required to
receive specific approval of their route from the FERC through an individual certificate.
However, in this case, even if WBI were to request an individual certificate, the FERC is not
obliged to issue one to a blanket certificate holder. *Tennessee Gas Pipeline Co. v, F.E.R.C.,* 898
F.2d 801, 805 (D.C. Cir. 1990). Unlike in the case of individual certificates, Defendants could
not object to FERC's issuance of the Certificate because it was issued over twenty years ago, and
challenges to FERC actions under the NGA must be brought within thirty days. 15 U.S.C. §
717r(a). Thus, the only issue is whether this Court has jurisdiction to evaluate the necessity of
WBI's route for the Pipeline.

      Defendants cite *Williams v. Transcontinental Gas Pipeline Corp.* for the proposition that
WBI may not have a right of condemnation if its route selection is tainted by bad faith and abuse
of discretion. 89 F.Supp. 485, 488-89 (W.D.S.C. 1950) ("[t]here may be cases where the
condemnor so abuses its discretion or acts in such bad faith that the courts would be justified in
intervening; but usually no Judge would take upon himself the best location for a utility line").
WBI correctly classifies Defendants' bad faith argument as an impermissible collateral attack on
the Certificate, and cites several cases where courts have refused to entertain such attacks.

4

Though the vast majority of these cases deal with individual and not blanket certificates, it is clear that blanket certificates were intended to function as individual certificates, subject to the project cost limitations.  *See Tennessee Gas Pipeline Co. v, F.E.R.C.,* 898 F.2d 801.

In *Tennessee Gas Pipeline Co. v. 104 Acres of Land,* the federal district court in Rhode Island outlined the procedures for challenging an FERC certificate of public convenience.  749 F.Supp. 427, 430 (D.R.I. 1990).  The court explained that district courts have a limited role in condemnation proceedings brought under the NGA, to "evaluate the scope of the certificate and to order condemnation of property as authorized in the certificate."  *Id.* (citing *Williams Natural Gas Co. v. Oklahoma City*, 890 F.2d 255, 262 (10th Cir.1989)(eminent domain authority granted to district courts does not provide challengers with additional forum to attack substance and validity of FERC order)).  Disputes concerning those certificates must be brought to FERC for rehearing within thirty days of issuance; FERC denials of rehearing can only be reviewed by the Court of Appeals.  *Id.* (citing 15 U.S.C. §§ 717r(b) & (a)).

The question is whether the Defendants' purported right to challenge the location of the Pipeline under the *Williams* case is valid considering that more recent authority holds that district courts lack jurisdiction to review the necessity of pipeline routes.  *Williams* is a 1950 case from the District of South Carolina and only five cases have cited *Williams* for that point of law (the most recent in 1988, before that in 1966).  Further, even though the landowners opposing condemnation in the *Williams* case did not allege bad faith or abuse of discretion, it is important to note that the *Williams* court also found that all federal cases had held that district courts had no jurisdiction to review the condemnor's determination of necessity where the condemnation was for a valid public purpose.  89 F.Supp at 489.  For these reasons, it would be inappropriate for

5

this Court to review the propriety of WBI's chosen route for the Pipeline.

Finally, the Linde Defendants cite the practice and procedure of Montana law in condemnation actions in support of their bad faith argument. This is consistent with the NGA, which states that in condemnation proceedings the "practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated." 15 U.S.C. § 717f(h). Montana law provides that in condemnation proceedings, "the use must be located in the manner that will be the most compatible with the greatest public good and the least private injury." Mont. Code Ann. § 70-30-110 (2005). Montana law also holds that a proposed route is an abuse of discretion "when the condemnor fails to consider the question of the least private injury between alternate routes equal in terms of public good." *Montana Power Co. v. Bokma*, 457 P.2d 769, 775 (Mont. 1969).

However, the Linde Defendants' reliance on Montana law is misplaced. Though the issue has not been decided by the Ninth Circuit, the Seventh and Eleventh Circuits, as well as the Eastern District of Washington, have uniformly held that the part of § 717f(h) referring to state practice and procedure has been repealed by implication by Fed.R.Civ.P. 71A, which governs condemnation action in federal courts. *Northwest Pipeline Corp. v. The 20' x 1,430' Pipeline Right of Way*, 197 F.Supp.2d 1241, 1244 (E.D. Wash. 2002) (refusing to apply Washington procedural law in pipeline condemnation case because Fed.R.Civ.P. 71A does not provide for state condemnation procedure). Therefore, though WBI's may have abused its discretion in routing the Pipeline, this Court cannot consider this issue.

## II.     WBI is entitled to immediate possession of the easements.

Having decided that this Court lacks jurisdiction to review the proposed route of the Pipeline, it must determine whether WBI is entitled to immediate use and possession of an easement over Defendants' property. Section 717f(h) of the NGA reads as follows:

> (h) Right of eminent domain for construction of pipelines, etc.
>
> *When any holder of a certificate of public convenience and necessity cannot acquire by contract*, or is unable to agree with the owner of property to the compensation to be paid for, *the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas*, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, *it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located*, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

Though the right of certificate holders to condemn easements is clear, nothing in the NGA provides for immediate possession. In order to be granted immediate use and possession of Defendants' property, WBI must show it is entitled to preliminary injunctive relief under Rule 65 Fed.R.Civ.P. *See East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 822-23 (4th Cir. 2005) (other Fed.R.Civ.P. apply where Rule 71A is silent; Rule 71A neither provides for nor precludes condemnor possession before final judgment). This comports with the longstanding rule that the Constitution does not require that compensation be paid in advance of the occupancy of the land

7

to be taken as long as the landowner is assured an adequate procedure to receive compensation before his possession is disturbed. *Cherokee Nation v. Southern Kansas Railway Co.,* 135 U.S. 641, 659 (1890). In the present case, if WBI were granted immediate possession, the landowners will be assured such adequate protection through WBI's issuance of a bond pursuant to Fed.R.Civ.P. 65(c).

In *Northwest Pipeline Corp.*, the Eastern District of Washington granted the pipeline company immediate use and possession of an easement over private property. 197 F.Supp.2d at 1246. Because the landowners conceded that Northwest was entitled to an easement under the NGA, the district court granted summary judgment for Northwest on the issue of defenses to the taking. 197 F.Supp.2d at 1243. However, the landowners disputed Northwest's right of immediate possession, claiming that Northwest was not entitled to immediate possession until after the amount of just compensation had been determined. *Id.* The court first noted that the NGA does not provide for immediate possession and that Fed.R.Civ.P. 71A contains the procedural rules for condemnation actions in federal court. 197 F.Supp.2d at 1243-44. Second, the court followed the lead of other courts in holding that because Fed.R.Civ.P. 71A was promulgated after the NGA, its provision for state procedural law in federal condemnation actions had been repealed by implication. 197 F.Supp.2d at1244. Thus, traditional Ninth Circuit preliminary injunction law governed whether Northwest was entitled to immediate possession. 197 F.Supp.2d at 1245.

The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies. *Sampson v. Murray*, 415 U.S. 61, 88 (1974). In the Ninth Circuit, the equitable criteria for granting a preliminary injunction are: 1) a strong likelihood of success on the merits;

2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; 3) a balance of hardships favoring the plaintiffs; and 4) advancement of the public interest. *Northwest Pipeline Corp.,* 197 F.Supp.2d at 1245 (citing *Mayweathers v. Newland,* 258 F.3d 930, 938 (9th Cir. 2001)).  The moving party may satisfy this burden by demonstrating "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Northwest Pipeline Corp.,* 197 F.Supp.2d at 1245 (citing *Textile Unltd., Inc. v. A. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir.2001)).

      WBI repeatedly states they have the "unquestionable right to condemn the subject easement," that their "ultimate success on this point is as sure as anything in litigation can be," and that the only issue is just compensation.  Defendants do not concede WBI's entitlement to the easement, but as discussed earlier, this Court does not have jurisdiction to consider whether WBI's bad faith and abuse of discretion in routing the Pipeline controverts its right of condemnation.  Because NGA §717f(h) grants certificate holders the right of condemnation, WBI has demonstrated their ultimate success on the merits.  Moreover, this Court's only role in NGA condemnation proceedings is to "evaluate the scope of the certificate and to order condemnation of property as authorized in the certificate." *Tennessee Gas Pipeline Co.,* 749 F.Supp. at 430.

      As for the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted, WBI claims it will suffer "enormous, irreparable harm if immediate use and possession is not granted."  According to WBI, if it does not complete the pipeline project by November 1, 2005 the "irreparable harm" amounts to lost revenue in the amount of $1,000 per day, increasing to $3,000 per day by mid 2006.  Delaying WBI's inevitable possession may also cause pipeline

construction contractors who are presently in the area to leave, resulting in substantial recommissioning costs for WBI.  In addition, the Conoco refinery will not have an adequate supply of natural gas to begin operational testing of its ULSD facilities on November 1, 2005, which will preclude Conoco from complying with federal regulations requiring it to provide ULSD fuel to retail stations by September 1, 2006.

Defendants assert that WBI has grossly overstated the irreparable harm it faces if their Motion for Immediate Use and Possession is denied.  The Schotts claim that WBI refused their offer to sell the right-of-way for $12,000 before and after the commencement of this action, less than $4000 more than WBI's offer of $8,163.74.  According to the Schotts, WBI should not be able to claim irreparable loss of $1000 a day for delay, when they could have had the easement for only $4000 more than their offer.  Further, the Schotts maintain that WBI can still repair its irreparable harm by buying the easement for $12,000 and reimbursing them for their attorneys fees.  Finally, the Schotts aver that WBI brought any alleged time constraints upon itself and that unlike the Schotts, who have only onc property for their future development, there are alternative routes for the Pipeline.

WBI's claims of irreparable harm are all based on loss of profits and increased expenses. It is well established that purely monetary injury is not normally considered irreparable.  *L.A. County Coliseum Commn. v. National Football League,* 634 F.2d 1197, 1202 (9th Cir. 1980) (citing *Samson,* 415 U.S. at 90).  However, in that case the court specifically stated that the plaintiff's lost revenues would be compensated by a damage award should they succeed on the merits.  *Id.*  The Supreme Court held the same in *Sampson,* a case upon which *L.A. County Coliseum Commn.* relies.  415 U.S. at 90 (denying preliminary injunction because federal law

providing back pay to wrongfully discharged employees prevented monetary loss from being "irreparable injury"). Here, if WBI is denied a preliminary injunction but is ultimately successful in condemning the property, no such monetary damages will be possible. Though WBI should not be rewarded for rushing to federal court when it could have purchased the easement from the Schotts for a mere $4000 more than its offer, WBI would suffer irreparable harm if it is denied immediate use and possession.

As to the third criteria, whether the balance of hardships favors the plaintiffs, WBI offers to post a cash bond in whatever amount necessary to ensure their just compensation in order to alleviate "any possible prejudice" to the landowners. The Lindes respond that their property, being in close proximity to Interstate 90 and South 27th Street is prime real estate for future development, which would be impossible once it is traversed by a 50-foot wide easement over a 12" natural gas pipeline. The Lindes' also claim that they purchased the subject property because it was an ideal location for a sign advertising their nearby KOA campground. This sign will be rendered worthless by the easement, resulting in the loss of an expensive sign and campground income.

However, the issue for immediate possession is not whether WBI can condemn Defendants' property, but whether they can use and possess that property *immediately*. The arguments Defendants proffer address the hardship they face if WBI is ultimately granted an easement over their property, not the hardships they face by granting immediate possession to WBI. Defendants claim that the harm they face is loss of future development potential, injury that it is not made more severe by giving WBI immediate possession. Even though granting WBI immediate possession places a significant hardship on Defendants both financially and

11

practically, this hardship is no more severe than granting WBI the easement a month from now. Thus, this factor also weighs in favor of WBI.

Finally, WBI asserts that granting them immediate use and possession to construct the Pipeline advances the public interest. According to WBI, evidence of this public interest is found in the fact that WBI was issued the Certificate in the first place. In passing the NGA, Congress found that the "business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest." 15 U.S.C. § 717(a). Moreover, the NGA directs the FERC to issue Certificates only where "the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity." 15 U.S.C. § 717f(e). Finally, the public interest will be served by granting WBI immediate possession so that Conoco can more quickly provide consumers with ULSD fuel. Defendants claim that the public interest is served by protecting private property rights, not in condemning more private property where there are already existing pipelines serving the Conoco refinery. The Linde Defendants assert "a message should be sent that utility companies must first look to existing utility corridors before they begin condemning hard working Montanan's property." Though this Court is sympathetic to Defendants, it cannot ignore a Congressional declaration of what is in the public interest.

In this case, WBI has demonstrated a combination of ultimate success on the merits and the possibility of irreparable injury. Though this Court does not relish in condemning private property of hard working Montanans, Congress has declared that private property must yield to natural gas pipelines and this Court cannot delay the inevitable.

Accordingly, **IT IS HEREBY ORDERED** that WBI's Motion for Immediate Use and Possession (*Doc. # 3* ) is **GRANTED**.

**IT IS FURTHER ORDERED** that in order to ensure that Defendants are justly compensated and to ensure payment of damages that may be suffered by any party as a result of a wrongful injunction WBI shall immediately post a bond in the following amounts, payable to the Clerk, United States District Court, James F. Battin Federal Building, Room 5405, 316 North 26th St., Billings, Montana, 59101:

$100,000 for the Schott Defendants; and

$150,000 for the Linde Defendants.

The Clerk is directed to notify the parties of the making of this Order.

Dated this 8th day of November, 2005.

   /s/ Richard F. Cebull
RICHARD F. CEBULL
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF MAILING
DATE: 11/8/05
BY: SLN
I hereby certify that a copy of
this Order was mailed to:
Scott Shingleton, Robert Ed Lee, Darrell Hirsch
NationsBanc Mortgage Corp., Miller Family 1992 Trust
John M. Miller, Jr. Revocable Trust
John T. Jones